IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



```
                                    )
SHIRLEY ANN BLANDING,               )
                                    )
          Plaintiff,                )
                                    )
v.                                  )    Civil Action No. 08-00314
                                    )
MICHAEL V. HAYDEN,                  )
Director,                           )
Central Intelligence Agency,        )
                                    )
          Defendant.                )
                                    )
```

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's unopposed Motion for Partial Dismissal and for Summary Judgment. See Fed. R. Civ. P. 12(b)(1), 56(b). Plaintiff filed suit against Defendant alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq., the Age Discrimination in Employment Act of 1990 (ADEA), 29 U.S.C. §§ 621-634, the Rehabilitation Act of 1973, 29 U.S.C. § 701, 791, and the Americans with Disabilities, Act of 1990 (ADA), 42 U.S.C. §§ 12101-12300. Specifically, Plaintiff's Amended Complaint alleges that Defendant created a hostile work environment, retaliated against Plaintiff after she filed a complaint with the Equal Employment Opportunity Commission (EEOC), discriminated against Plaintiff based on her disability, and failed to promote Plaintiff. This Court has

jurisdiction over Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1331.

Plaintiff is a forty-seven year old employee of the Central Intelligence Agency (CIA). Defendant Michael V. Hayden is the Director of the CIA. Defendant is named in his official capacity. Plaintiff is employed at the CIA's Diversity Plans and Programs Department (DPP) at a Federal Government Grade GS-13 level. Rickey Jasper (Jasper) became the DPP Director and Plaintiff's supervisor on March 16, 2005. Soon thereafter, Jasper observed a significant number of personal issues between DPP employees that negatively impacted the DPP mission and program objectives, and decreased employee effectiveness. After several unsuccessful attempts at resolving the personal issues that permeated the DPP office, Jasper held a mandatory employee meeting on October 26, 2005. This meeting, attended by Plaintiff and the other DPP employees, was highly contentious.

At the meeting, individual employees personally addressed other employees to voice issues. There came a time when an employee addressed Plaintiff to express her satisfaction that she and Plaintiff were positively resolving the issues between them. At that point, Plaintiff became concerned that certain employees were taking notes during the meeting and Plaintiff refused to respond until the note-taking ceased. When Plaintiff was assured that no further notes would be taken, Plaintiff responded by also

expressing satisfaction that their relationship had improved. After that exchange, another employee voiced her displeasure with Plaintiff, which quickly deteriorated into a heated exchange of words between a number of employees at the meeting.   The meeting became out of control and concluded unsuccessfully.

On November 3, 2005, Jasper called for a second employee meeting, which was just as contentious and unsuccessful as the first.   At this meeting, Plaintiff expressed her opinion that the meeting was unethical and the only mechanism to repair the personal relationships in the office was outside professional intervention.   Several other meeting attendants voiced an opposition to Plaintiff's opinion.   A debate between Plaintiff and the other employees ensued, Plaintiff became offended, and started to leave the room.   Jasper demanded that Plaintiff remain in the meeting.   Plaintiff left the room anyway because she was having a panic attack as a result of the high stress meeting.   As Plaintiff was outside the meeting room door catching her breath and trying to recover from the panic attack, a manager came out and asked her to return to the meeting.   When Plaintiff re-entered the room, Jasper admonished Plaintiff in front of the entire group for walking out of the meeting.

Several months later, in March 2006, the CIA announced a vacancy for the Diversity Program Manager Senior position in the DPP office.   The position required a thorough knowledge of the

3

CIA organizational structure, exceptional communication skills, in order to relay sensitive messages to all levels of CIA management and employees, and exceptional writing skills.  It also required demonstrated leadership, organizational skills, problem solving skills, interpersonal and negotiation skills, the ability to interact with a diverse population, and the ability to multitask and effectively manage workflow.  The position qualifications include a preference that the applicant have knowledge of diversity related regulations, policies, and issues, experience with minority hiring efforts, and budget familiarization.

Plaintiff's application did not specifically articulate her qualifications for each and every required and desired qualification delineated in the job requirement specification. Instead, Plaintiff wrote "I believe I am exceptionally qualified for the position of Diversity Program Manager: Senior and I am confident that I will continue to contribute significantly to the mission of the DCIA/Diversity Plans and Program staff should I be selected."  Plaintiff did include a "summary of agency employment" that described each position she held at the CIA.

A selection panel convened to review the applicants, including Plaintiff, and found another applicant to be the most qualified applicant for the position.  The applicant selected for the position was a GS-14 at the time of her application, while

4

Plaintiff was only a GS-13.  The selected applicant also submitted a superior application to Plaintiff's.  She wrote a full narrative for each of the required qualifications listed in the vacancy announcement to establish that she met each required qualification and individually addressed the desired qualifications.  Specifically, she addressed her knowledge of the Agency's organizational structure, noting that she had over 13 years of agency experience, she detailed her exceptional briefing skills, giving specific examples of times she conducted sensitive briefings, and she highlighted her writing skills, noting her experience with writing concise and accurate reports as part of her previous work experience.  The selected candidate also described her demonstrated leadership ability, describing how her supervisors commended her ability to motivate her team members. She highlighted her interpersonal and negotiation skills, mentioning that her supervisors often asked her to return telephone calls to highly agitated individuals awaiting adjudication of their cases because of her superior interpersonal skills.  She also detailed her problem solving skills, organizational skills, and workflow management skills by giving specific examples of her experience.

On February 3, 2006, Plaintiff filed a formal complaint of discrimination with the CIA's Office of Equal Employment Opportunity (OEEO).  In June 2006, Plaintiff applied and was

selected for a job promotion to the GS-14 level.  On June 28,
2006, Plaintiff filed an amended complaint with the CIA OEEO.
The CIA OEEO investigated Plaintiff's allegations and issued a
Final Agency Decision on December 6, 2006, finding no
discrimination or retaliation.  Plaintiff appealed the Final
Agency Decision to the Equal Employment Opportunity Commission
(EEOC) Office of Federal Operations, which affirmed the Agency's
decision on May 29, 2007.  On August 20, 2007, Plaintiff filed
suit in the United States District Court for the District of
Maryland.  The case was transferred to this Court on March 28,
2008.

     Pursuant to Rule 56(c), this Court must grant summary
judgment if the moving party demonstrates "that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). In reviewing a motion for summary judgment, this Court
views the facts in a light most favorable to the non-moving
party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

     Once a motion for summary judgment is properly made and
supported, the opposing party then has the burden of showing that
a genuine dispute as to any material fact does exist. Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-
87 (1986). The mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly

6

supported motion for summary judgment; the requirement is that
there be no genuine issue of material fact. Anderson, 477 U.S. at
248. "Rule 56(e) requires the nonmoving party to go beyond the
pleadings and by [her] own affidavits, or by the 'depositions,
answers to interrogatories, and admissions on file,' designate
'specific facts showing that there is a genuine issue for
trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
Despite Plaintiff's failure to respond to the motions presently
before the Court, the Court construes all reasonable inferences
in Plaintiff's favor.

     To support a claim of hostile work environment based on age
or gender[1], Plaintiff must present facts sufficient to show that
"(1) she experienced unwelcome harassment; (2) the harassment was
based on her gender ... or age; (3) the harassment was
sufficiently severe or pervasive to alter the conditions of
employment and create an abusive atmosphere; and (4) there is
some basis for imposing liability on the employer." Bass v. E.I.
Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2002).

     The evidence of record establishes that Plaintiff was one
of several employees involved in the inter-office personality

---

[1] Plaintiff's Amended Complaint does not articulate a
protected category upon which she bases her hostile work
environment claim.  Therefore, the Court analyzes Plaintiff's
hostile work environment claim under the age and gender
categories, as Plaintiff raised and properly exhausted these
claims in her administrative proceedings.

conflicts that came to a boiling point at the DPP employee meetings on October 26, 2005, and November 3, 2005. Both meetings were replete with back-and-forth sniping amongst co-workers. However, none of the comments made at the meeting, whether directed to Plaintiff or to other employees, bore any gender or age-based animus, or other type of animus against another protected category of employee. Plaintiff became particularly offended when she proffered that DPP needed professional outside help to remedy its problems and a co-worker rebuffed this idea in front of the group. Plaintiff was so upset about that comment and the other stress resulting from the meeting that she suffered a panic attack and left the meeting, despite Jasper's demand that Plaintiff remain at the meeting.

Upon Plaintiff's return to the meeting, her supervisor Jasper chastised her in front of the group for walking out of the meeting and told her she was unprofessional. There was no gender or age-based animus in this interaction either, and it is well established that inter-office personality conflicts do not fall within the purview of Title VII. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000). Even construing all facts in the light most favorable to Plaintiff, she fails to point to any specific harassment based on her age or her gender, therefore Plaintiff cannot establish the second element of a hostile work environment claim.

Plaintiff further failed to establish that the conduct for which she complains, "create[d] an objectively hostile or abusive work environment . . . that a reasonable person would find hostile or abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The Fourth Circuit articulated that complaints based on "rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008)(internal citations and quotation marks omitted). Plaintiff's harassment complaint arises from the occurrences at two staff meetings where Plaintiff failed to articulate any type of gender or age-based animus. Instead, Plaintiff complains of rude treatment from her co-workers and a harsh supervisor, neither of which rise to the level of severe or pervasive treatment required to support a claim of hostile work environment.

To establish a prima facie case of retaliation, a plaintiff "must prove three elements: first, that she engaged in protected activity; second, that an adverse employment action was taken against her; and third, that there was a causal link between the protected activity and the adverse employment action." Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)(citations omitted). If a plaintiff establishes a prima facie case, the burden shifts

9

to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)(citations omitted). If the defendant meets the burden of production, the burden then shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Id.</u> The evidence of record, construed in the light most favorable to Plaintiff, establishes that Plaintiff engaged in protected activity when she filed a complaint with the EEOC on February 2, 2006, and that an adverse employment action was taken against her in April 2006, when she applied and was not selected for the Diversity Program Manager Senior position. However, Plaintiff failed to establish a causal connection between filing an EEOC complaint and not being selected for the Diversity Program Manager Senior position. Several months elapsed between the date of her protected activity and the adverse employment action, therefore proximity alone cannot establish Plaintiff's prima facie case. <u>See</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001). More importantly, in June 2006, only a few months later, Plaintiff received a promotion. Based on these facts, Plaintiff has failed to establish a prima facie case of retaliation.

Even if Plaintiff had established a prima facie case of

10

retaliation, Plaintiff cannot rebut Defendant's legitimate, non-retaliatory explanation of selecting a better qualified candidate for the Diversity Program Manager Senior position.  A selection panel convened, reviewed all applicants for the position, and determined that another applicant was more qualified than Plaintiff.  Not only was the other applicant a more experienced employee, already at a GS-14 level compared to Plaintiff's GS-13 level, but the other applicant provided a complete and more thorough application for the position.  Plaintiff's application failed to specifically address all of the required and desired qualifications for the position vacancy.  Plaintiff merely attached a history of her employment with the agency in lieu of specifically addressing her qualifications.  Plaintiff generally stated that she believed that she was qualified for the position, however she failed to provide any examples or reasons to support this belief.  The candidate selected for the position, in great detail, specifically addressed each aspect of her prior work experience and applied it to all of the required and desired qualifications for the Diversity Program Manager Senior position. It is Plaintiff's burden to establish that she was the better qualified candidate.  <u>See</u> <u>Gairola v. Virginia Dep't of Gen.</u> <u>Services</u>, 753 F.2d 1281, 1287 (4th Cir. 1984).  The undisputed evidence of record, construed in the light most favorable to Plaintiff, does not establish that Plaintiff was the better

qualified candidate.  The selection committee chose the applicant who had a superior application, more government experience than Plaintiff, and who was the best qualified for the position.  For these reasons, summary judgement is granted in Defendant's favor as to Plaintiff's retaliation claim.

Turning next to Plaintiff's claim of disability discrimination, it is well established that a claimant's administrative charge before the EEOC frames the scope of any subsequent litigation.  See Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. (citations omitted). Plaintiff did not mark the box for disability discrimination in her EEOC complaint, nor did Plaintiff's complaint describe any type of discrimination based upon a disability.  A reasonable investigation of Plaintiff's allegations of discrimination for her age, gender, and retaliation for participating in the EEOC process did not reveal any claim of disability discrimination during the administrative investigation, nor should it have.  See Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002)(holding that claims of color discrimination, sex discrimination and retaliation are not reasonably related to or

12

expected to follow from a race discrimination charge).
Accordingly, Plaintiff is barred from raising a claim for
disability discrimination based on her failure to raise it during
the administrative proceedings.

In addition to being procedurally barred from bringing a
disability discrimination claim, Plaintiff's claim also fails
under the Rehabilitation Act.  A claim may be brought against the
United States under the Rehabilitation Act, which provides that
"[n]o otherwise qualified individual with a disability . . .
shall, solely by reason of her or his disability, be excluded
from participation in, be denied the benefits of, or be subjected
to discrimination under any program or activity . . . conducted
by any Executive agency."  29 U.S.C. § 794(a).  Under the
Rehabilitation Act, in the employment context, a Plaintiff may
assert a disability discrimination claim or a failure to
accommodate claim.  Plaintiff cannot establish a prima facie case
of either claim in this instance.

To establish a prima facie case of disability
discrimination, "a plaintiff must prove: (1) that [s]he has a
disability; (2) that [s]he is otherwise qualified for the
employment or benefit in question; and (3) that [s]he was
excluded from the employment or benefit due to discrimination
solely on the basis of the disability."  Doe v. Univ. of Md. Med.
Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995).  To establish a

13

prima facie case for failure to accommodate, a plaintiff must establish: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."   Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001).   Plaintiff failed to establish that she suffers from a disability, defined by the Rehabilitation Act, as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).   Instead, Plaintiff's complaint described one isolated panic attack that she suffered during the November 2005 employee meeting.   Plaintiff does not assert any facts that would suggest that the one panic attack constitutes a mental impairment that limits her ability to perform a major life activity, nor that it substantially limits her activity at all.   By Plaintiff's own admission in June 2006, seven months after her panic attack, Plaintiff received a job promotion to the GS-14 level.   Had Plaintiff exhausted her administrative remedies as to her disability claim, Plaintiff still failed to establish that she suffers from a disability within the meaning of the Rehabilitation act.

Plaintiff's Amended Complaint also alleges that she was passed over for a promotion in favor of a younger African American woman.  Plaintiff's amended charge before the CIA OEEO asserted that her non-selection for the position was based on retaliation for lodging a complaint before the CIA OEEO, not any protected category such as gender or age.  Accordingly, this claim is procedurally barred because Plaintiff failed to exhaust her administrative remedies.  See Chacko, 429 F.3d at 506.  Even if Plaintiff had exhausted her administrative remedies as to this claim, it still fails.  After Defendant established a legitimate non-retaliatory reason for Plaintiff's non-selection, in this instance Defendant selected a better qualified candidate for the position, the burden shifts back to Plaintiff to prove that Plaintiff was the better qualified candidate.  See Gairola, 753 F.2d at 1287.  Plaintiff failed to meet this burden because the undisputed evidence of record establishes that the candidate selected for the position not only submitted a superior application, but also that the selected candidate had more government experience than Plaintiff.

Plaintiff also claims that when she applied and was selected for a Diversity Program Manager II position, the position was listed as a GS-15 position, but after she was selected, Plaintiff was informed that it was a GS-14.  Plaintiff does not articulate whether this occurrence resulted from retaliation for lodging a

complaint with the EEOC, or because of her membership in a
protected category, but either way, Plaintiff's claim fails.
First, Plaintiff is procedurally barred from raising this claim
because she failed to raise this issue during the administrative
proceedings.  See Chacko, 429 F.3d at 506.  Further, applying the
burden shifting analysis to this claim, Defendant established
that an employee promotion within the Federal Government is
limited to a one-grade advancement.  Any exception to this policy
must be recommended by the Head of Career Services and approved
by the Chief Human Resources Officer.  Therefore, Plaintiff was
only eligible for a promotion to the GS-14 level because she was
at the GS-13 level when she applied and was selected for the new
position.  Further, to receive a promotion to the GS-15 level, an
employee should serve twenty eight months as a GS-14.  It is
undisputed that Plaintiff was a GS-13 when she applied for the
position and had not worked the requisite time period as a GS-14
to be eligible for the GS-15 level.  Plaintiff failed to
establish, as it was her burden to do so, that Defendant's non-
discriminatory explanation was, in fact, a pretext for
discrimination or retaliation.  See Texas Dep't of Cmty. Affairs,
450 U.S. at 253.

        Lastly, Plaintiff's claim under the Americans with
Disabilities Act (ADA) fails.  It is Plaintiff's burden to
establish that subject matter jurisdiction exists.  See Williams

v. United States, 50 F.3d 299, 304 (4th Cir. 1995). The ADA expressly excludes the United States and its agencies from its provisions. See 42 U.S.C. § 12131(A)-(B). Instead, the Rehabilitation Act is the avenue through which a plaintiff may raise a disability discrimination claim against a federal agency. See 42 U.S.C. § 12111(5)(B)(I); Hockaday v. Brownlee, 370 F. Supp. 2d 416, 422 (E.D. Va. 2004).

For the reasons stated above, Defendant is entitled to partial dismissal on the ADA claim and summary judgment as to all other claims.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
October 24, 2008